UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

MICHAEL C.,[1]

                            Plaintiff,                DECISION AND ORDER

-vs-

                                                      24-CV-0602-MAV

COMMISSIONER OF SOCIAL SECURITY,

                            Defendant.

_____

## INTRODUCTION

In June 2024, Michael C. ("Plaintiff") filed this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the Commissioner of the United States Social Security Administration's ("Commissioner") denial of his application for Disability Insurance Benefits ("DIB"). ECF No. 1. Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF No. 7 (Plaintiff); ECF No. 9 (Commissioner). For the reasons set forth below, the matter is remanded to the Commissioner for further proceedings.

## PROCEDURAL HISTORY

The Court assumes the reader's familiarity with the facts and procedural history in this case, and therefore addresses only those facts and issues which bear directly on the resolution of the motions presently before the Court.

---

[1] The Court's Standing Order issued on November 18, 2020, directs that, "in opinions filed pursuant to . . . 42 U.S.C. § 405(g), in the United States District Court for the Western District of New York, any non-government party will be identified and referenced solely by first name and last initial."

1

**I. Plaintiff's Applications**

Plaintiff filed his application for DIB in February 2020, alleging a disability onset date of March 1, 2018. Administrative Record ("AR"), 359,[2] ECF No. 3. The alleged onset date was later amended to January 1, 2019. AR at 113. In his application, Plaintiff identified multiple mental and physical conditions that he claimed limited his ability to work, including: depression, anxiety, social anxiety, motorcycle accident injuries, left leg injury, thyroid removed, colitis, polyps, and irritable bowel syndrome. AR at 412. In July 2020, the Commissioner found that Plaintiff was "not disabled," and his claim for DIB was denied. AR at 85–96. Plaintiff requested a reconsideration of the initial determination, and in October 2020 was again found "not disabled." AR at 97–109.

After the Commissioner denied his application at the initial level and on reconsideration, Plaintiff appeared with counsel via telephone on July 27, 2021 for a hearing before an Administrative Law Judge ("ALJ"). AR at 113. On August 4, 2021, the ALJ issued a decision finding that Plaintiff was not disabled, and not entitled to DIB. AR at 110–22. In September 2022, the Commissioner's Appeals Council found that the ALJ failed to admit relevant evidence into the record, and remanded the matter to the ALJ for receipt and consideration of the evidence. AR at 129–30.

**II. Plaintiff's Second Hearing, and the ALJ's Second Decision**

After the Appeals Council remanded the matter, Plaintiff appeared with counsel via telephone on February 28, 2023 for another hearing before the ALJ. AR at 39. At the

---

[2] The page references from the transcripts are to the bates numbers inserted by the Commissioner, not the pagination assigned by the Court's CM/ECF electronic filing system.

hearing, the ALJ heard testimony from Plaintiff; medical expert Ashock Jilhewar, M.D., a board certified internist and gastroenterologist; medical expert Sharon Kahn, Ph.D., a psychologist; and vocational expert Diane Durr (the "VE"), a certified rehabilitation counselor. AR at 37–79.

On July 14, 2023, the ALJ issued a decision finding that Plaintiff was not disabled, and therefore did not qualify for DIB. AR at 30.

At the outset, the ALJ found that Plaintiff met the insured status requirements for DIB[3] through December 31, 2024. AR at 19. With respect to whether he engaged in substantial gainful activity, the ALJ indicated that there was some evidence that Plaintiff had engaged in work activity since his alleged onset date, but that it was not necessary to determine whether the work constituted substantial gainful activity because there were other grounds for denying Plaintiff's application. AR at 19–20.

Then, at step two of the Commissioner's "five-step, sequential evaluation process,"[4] the ALJ determined that Plaintiff had several severe impairments:

---

[3] Claimants must meet the insured status requirements of the Social Security Act to be eligible for DIB. *See* 42 U.S.C. § 423(c); 20 C.F.R. § 404.130.

[4] In addition to the insured status requirements for DIB benefits, the Social Security Administration has outlined a "five-step, sequential evaluation process" that an ALJ must follow to determine whether a claimant has a "disability" under the law:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014); citing, *inter alia*, 20 C.F.R. § 404.1520(a)(4)(i)–(v), § 416.920(a)(4)(i)–(v)). The claimant bears the burden of proof for the first four steps of the process. 42 U.S.C. § 423(d)(5)(A); *Melville v. Apfel*, 198 F.3d 45, 51 (2d Cir. 1999). At step five, the burden shifts to

hypothyroidism, irritable bowel syndrome, gastroesophageal reflux disease ("GERD"), major depressive disorder, and generalized anxiety disorder. AR at 20. She found that Plaintiff's status-post ankle fracture and left leg injury from 2016 were non-severe, but noted that she fully accounted for Plaintiff's alleged symptoms by limiting him to an RFC at sedentary exertion. AR at 20.

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"). AR at 21–23. In making this assessment, the ALJ considered Listing 5.06 for inflammatory bowel disease, and multiple listings for Plaintiff's thyroid gland disorder, including Listings in 4.00 (cardiac dysfunction), 5.00 (weight loss), 9.00 (endocrine disorders), 11.00 (cerebrovascular accidents), and 12.00 (cognitive limitations). Additionally, the ALJ performed the "special technique" outlined in 20 C.F.R. § 404.1520a to assess whether Plaintiff's mental impairments satisfied the criteria for a depressive disorder (Listing 12.04), or an anxiety disorder (Listing 12.06). AR at 21–22. However, after evaluating the four areas of mental functioning identified in 20 C.F.R. § 404.1520a(c) (i.e., the "paragraph B" criteria), ALJ found that Plaintiff had no limitation in understanding, remembering, or applying information; moderate limitation interacting with others; moderate limitation concentrating, persisting, or maintaining pace; and mild limitation adapting or managing himself. AR at 22. Therefore, the ALJ found that

---

the Commissioner to demonstrate that there is other work in the national economy that the claimant can perform. *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009).

4

Plaintiff's mental impairments did not satisfy any of the listings.

Then, before proceeding to step four, the ALJ determined that Plaintiff had the residual functional capacity ("RFC")[5] to perform sedentary work as defined in 20 C.F.R. § 404.1567(a), except for the following restrictions:

> [Plaintiff's] work is limited to simple routine tasks in a low stress job, defined as having only occasional decision making and only occasional changes in the work setting; only occasional interaction with the public; only occasional interaction with co-workers; work with no strict production quotas or strict deadlines; work with no fast-paced work environments. The individual should never climb ladders, ropes, scaffolds, and never crawl.

AR at 23–29.

At step four, based on Plaintiff's age, education, work experience, and RFC, as well as the testimony of the VE, the ALJ found that Plaintiff was not capable of performing his past relevant work as a production worker or security guard. AR at 29. Nevertheless, the ALJ found at step five that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, namely, an assembler, a lens inserter, and a sorter. AR at 30. Therefore, the ALJ found that Plaintiff was not disabled, and not entitled to DIB. AR at 30.

On May 3, 2024, the Appeals Council denied Plaintiff's request to review the ALJ's decision. AR at 1–6. The ALJ's decision thus became the "final decision" of the Commissioner. *See Perez v. Chater*, 77 F.3d 41, 44 (2d Cir. 1996) (citing 20 C.F.R. § 404.981) ("[I]f the Appeals Council denies review, the ALJ's decision becomes the [Commissioner]'s final decision.").

---

[5] "Residual functional capacity" means the most that the claimant can still do in a work setting despite the limitations caused by the claimant's impairments. 20 C.F.R. § 404.1545.

## LEGAL STANDARD

Under 42 U.S.C. § 423(d), a claimant is disabled and entitled to DIB if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months."

Where an individual's application for DIB has been denied, 42 U.S.C. § 405(g) defines the process and scope of judicial review of the Commissioner's final decision. The fourth sentence of § 405(g) authorizes the reviewing court to enter "a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." The sixth sentence authorizes the reviewing court to "order additional evidence to be taken before the Commissioner . . . upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." *Tirado v. Bowen*, 842 F.2d 595, 597 (2d Cir. 1988) (discussing § 405(g)).

"The entire thrust of judicial review under the disability benefits law is to ensure a just and rational result between the government and a claimant, without substituting a court's judgment for that of the [Commissioner], and to reverse an administrative determination only when it does not rest on adequate findings sustained by evidence having rational probative force." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (internal citation and quotation marks omitted). Therefore, it is not the reviewing court's function to determine *de novo* whether the claimant is disabled. *Brault v. Soc.*

*Sec. Admin., Comm'r*, 683 F.3d 443, 447 (2d Cir. 2012). Rather, the reviewing court must first determine "whether the Commissioner applied the correct legal standard[s]." *Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999). Provided the correct legal standards are applied, the district court's review is deferential: a finding by the Commissioner is "conclusive" if it is supported by "substantial evidence." 42 U.S.C. § 405(g).

"Whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (noting that the phrase "substantial evidence" is a term of art used in reviewing administrative agency decisions to signify evidence that amounts to "more than a mere scintilla"). Thus, once an ALJ finds facts, a reviewing court can reject those facts "only if a reasonable factfinder would have to conclude otherwise." *Brault*, 683 F.3d at 448. Yet, although "the evidentiary threshold for the substantial evidence standard is not high, . . . [it] is also not merely hortatory: [i]t requires relevant evidence which would lead a reasonable mind to concur in the ALJ's factual determinations." *Colgan v. Kijakazi*, 22 F.4th 353, 359 (2d Cir. 2022) (internal quotation marks omitted).

## DISCUSSION

Plaintiff's sole challenge to the ALJ's decision is to the ALJ's evaluation of the medical opinion of Plaintiff's treating psychologist, Amita Marks, Ph.D. Plaintiff argues that the ALJ failed to properly evaluate Dr. Marks's opinion, and rejected it based on cherry-picked and mischaracterized evidence.

The record contains notes from Plaintiff's treatment with Dr. Marks between June 2021 and January 2023. AR 1179–1278. On January 20, 2023, Dr. Marks

7

completed a "Treating Medical Source Statement" that indicated, among other things, that Plaintiff had functional limitations in the areas of understanding, memory, and sustained concentration that would preclude Plaintiff's work for more than 20% of the workday, and functional limitations in the areas of "social interaction" and "adaptation" that would preclude performance of all work in a regular work setting. AR at 1283–84. She estimated that Plaintiff's impairments would cause him to be off-task more than 30% of the workday. AR at 1284.

The ALJ evaluated Dr. Marks' opinion as follows:

> Although Dr. Marks is a treatment provider, this opinion is unpersuasive as it is inconsistent with her own findings of generally unremarkable mental status examinations despite depressed mood, and no medications until September 2022 at [AR at 1244, 1252, 1257, 1263, 1268, 1276]. Significantly, Dr. Marks noted in her own session notes, in November 2022, that the claimant reported improvement on medication (Effexor), which does not support the extreme limitations [in her opinion; citing AR at 1264]. Additionally, Dr. Marks does not have knowledge of Social Security disability programs, evidentiary requirements, or listing criteria. Moreover, the opinion is inconsistent with the testimony of Dr. Kahn, whose opinion is more persuasive. Therefore, the specific limitations have not been adopted.

AR at 27.

**I. Legal Principles**

Regulations effective for all claims filed after March 27, 2017 provide that the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a). *See also, e.g., Spottswood v. Kijakazi*, No. 23-54-CV, 2024 WL 89635, at *3 (2d Cir. Jan. 9, 2024) (noting that under 20 C.F.R. § 404.1520c, the ALJ "owes no special deference to any

8

particular medical opinion in the record"). Rather, the regulations direct that the ALJ will evaluate the "persuasiveness" of all opinions and prior administrative medical findings in the record by assessing multiple factors, including supportability, consistency, the length and nature of the relationship of the source with the claimant, the source's specialization, and "other factors" that tend to support or contradict a medical opinion. 20 C.F.R. § 404.1520c(c).

Of these factors, supportability and consistency are the most important. 20 C.F.R. § 404.1520c(b)(2). Therefore, while the ALJ need not explain in her decision how she considered all of the factors, she must explain how she "considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings . . . ." 20 C.F.R. § 404.1520c(b)(2). Supportability refers to how "the objective medical evidence and supporting explanations presented by a medical source . . . support [the medical source's] opinion(s) or prior administrative medical finding(s)." 20 C.F.R. § 404.1520c(c)(1). Consistency refers to how similar "a medical opinion(s) or prior administrative medical finding(s) is with the evidence" in the record. 20 C.F.R. § 404.1520c(c)(2).

## II. The ALJ's Evaluation of Dr. Marks's Opinion

The Court agrees with Plaintiff's observation that the ALJ's supportability analysis of Dr. Marks' opinion is inaccurate. The ALJ stated that Dr. Marks's opinion is "inconsistent with her own findings of generally unremarkable mental status examinations despite depressed mood . . . ." AR at 27 (citing AR at 1244, 1252, 1257, 1263, 1268, 1276). In fact, however, none of the mental status examinations cited by the

9

ALJ were actually from Dr. Marks's notes. Rather, they were examinations performed by Psychiatric Mental Health Nurse Practitioner ("PMHNP")[6] Jami Liebner, who saw Plaintiff for medication management. *See, e.g.,* AR at 1268 (making the decision to "[c]ontinue Effexor at current dose"). In other words, the ALJ's evaluation did not address "objective medical evidence . . . presented by a medical source . . . [to] support [the medical source's] opinion(s) . . . ." as required by 20 C.F.R. § 404.1520c(c)(1); the ALJ's "supportability" analysis speaks instead to the "consistency" factor.

As noted above, the regulations make clear that the ALJ's decision *must* explain how the ALJ considered both the supportability and consistency factors for each medical source in the record. 20 C.F.R. 404.1520c(b)(2). Thus, an ALJ's failure to adequately explain how she considered these two factors for any medical source is procedural error. *See Loucks v. Kijakazi*, No. 21-1749, 2022 WL 2189293, at *2 (2d Cir. June 17, 2022).

A procedural error is harmless if "'a searching review of the record' assures [the court] 'that the substance of the [regulation] was not traversed.'" *Id.* (quoting *Estrella v. Berryhill*, 925 F.3d 90, 96 (2d Cir. 2019); *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004)). Indeed, courts in this district have found that "typographical errors – even ones misattributing the opinion of a treating source provider – may, under certain circumstances, be harmless." *Rhiannon W. v. Comm'r of Soc. Sec.*, No. 21-CV-6333MWP, 2023 WL 6118267, at *5 (W.D.N.Y. Sept. 19, 2023) (citing *Ortiz v. Colvin*, 298 F. Supp. 3d 581, 591 (W.D.N.Y. 2018)). Nevertheless, remand is appropriate where the court is

---

[6] According to the Cleveland Clinic, "a psychiatric mental health nurse practitioner (PMHNP) is a healthcare provider who cares for people with mental health conditions and substance use disorders. Also called psychiatric nurse practitioners, these healthcare providers can prescribe medication, provide therapy, and diagnose and treat a wide range of mental health conditions." PMHNP, CLEVELAND CLINIC, https://my.clevelandclinic.org/health/articles/psychiatric-nurse-practitioner-pmhnp (last accessed September 23, 2025).

"unable to fathom the ALJ's rationale in relation to the evidence in the record" without "further findings or clearer explanation for the decision." *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996) (quoting *Berry v. Schweiker*, 675 F.2d 464, 469 (2d Cir. 1982)).

The Court finds that under the circumstances in the present case, the ALJ's attribution of PMHNP Liebner's mental status examinations to Dr. Marks is not harmless error. Dr. Marks's opinion that Plaintiff had work-preclusive functional limitations caused by his "extreme social anxiety," if persuasive, would have a decided effect on the ALJ's decision as to whether Plaintiff is disabled and entitled to DIB. Yet because the ALJ misattributed PMHNP Liebner's examinations to Dr. Marks, the Court has no means to determine with any certainty the outcome of the ALJ's supportability analysis. *See Rhiannon W.*, 2023 WL 6118267, at *5 (quoting, *inter alia*, *Maria J. v. Comm'r of Soc. Sec.*, 2020 WL 7296751, *5 (W.D.N.Y. 2020) ("it is impossible for this [c]ourt to determine whether the ALJ would have weighed the opinion evidence in the same manner if she had appreciated that [plaintiff's treating osteopathic physician] – not [plaintiff's treating neurologist] – authored the . . . light duty note[;] [n]or can I discern whether the ALJ would have reached the same RFC determination had she not made this misidentification").

Notwithstanding Plaintiff's claims that the ALJ was "cherry-picking" the evidence to reach her desired outcome, the Court's finding of harmful procedural error does not suggest the propriety of a particular outcome on remand. *Rhiannon W.*, 2023 WL 6118267, at *5 (quoting *Karen D. R. v. Kijakazi*, 2023 WL 5009251, *8-9 (E.D. Va. 2023) ("[i]t may be that on remand the ALJ will make a similar assessment of [the

11

treating provider's] opinion[,] . . . [b]ut the court cannot supply that assessment in the first instance, and therefore remand is required"), *report and recommendation adopted by*, 2023 WL 5004034 (E.D. Va. 2023)). As the Commissioner points out, "what a claimant may label as cherry-picking can often be described more neutrally as weighing the evidence." ECF No. 9-1 at 12 (quoting *Karin D. v. Comm'r of Soc. Sec.*, No. 6:20-CV-1158-CJS, 2022 WL 3355253, at *7 (W.D.N.Y. Aug. 15, 2022). The ALJ's misattribution in the present case prevents a determination as to which description is most fitting here. What is clear, however, is that the matter must be remanded for a re-evaluation of Dr. Marks's opinion under 20 C.F.R. § 404.1520c.

## CONCLUSION

For the reasons discussed above, Plaintiff Michael C.'s motion for judgment on the pleadings [ECF No. 7] is granted to the extent that the matter is remanded to the Commissioner for further proceedings pursuant to the fourth sentence of 42 U.S.C. § 405(g), and the Commissioner's motion for judgment on the pleadings [ECF No. 9] is denied.

SO ORDERED.

DATED:   September 26, 2025
         Rochester, New York

_____
HON. MEREDITH A. VACCA
United States District Judge